Dear Mr. Conner:
This office is in receipt of your opinion request wherein you pose the following questions:
 1) Can the Plaquemines Parish Government charge private landfill owners a fee of $1.00 per ton for the dumping of garbage in the landfills located within the boundaries of Plaquemines Parish?
 2) Can the Plaquemines Parish Government charge a boat launch fee of $1.00 per boat for every recreational boat launched in Plaquemines Parish and a $1.00 registration fee for all commercial boats launched within Plaquemines Parish to offset the Plaqumines Parish Government administration costs for maintaining safe waterways within the Plaquemines Parish boundaries?
 3) Can the Plaquemines Parish Government charge a local oyster tag fee of twenty-five cents (25) per sack of oysters harvested within Plaquemines Parish?
With regard to question one, above, you state in your opinion request that trash and debris emanating from trucks in route to private disposal sites is a continuing source of concern for the parish. The stated purpose of the proposed dumping fee is to "reimburse the Plaquemines Parish Government for the cost of its employees, equipment, fuel, etc., which is incurred every time the public labor force is used to pick up the debris that is left strewn along Plaquemines Parish Highway 11."
In the opinion of this office, the Plaquemines Parish Government cannot, for the reasons you have described, charge private landfill owners an added fee for the dumping of garbage where other, less intrusive means exist. Indeed, the application of LSA-R.S. 30:2531.3 appears to forego any such need for additional regulation of landfill owners such as that being proposed by the Plaquemines Parish Government. LSA-R.S. 2531.3 provides the remedy sought, to wit:
 A. No person shall dispose or permit the disposal of litter resulting from industrial, commercial, mining, or agricultural operations in which the person has a financial interest upon any public place in the state, upon private property in this state not owned by him, upon property located in rural areas in this state not owned by him, or in or on the waters of this state, whether from a vehicle or otherwise, including but not limited to any public highway, public right-of way, public park, beach, campground, forest land, recreational area, trailer park, highway, road, street, or alley, except when such property is designated by the state or by any of its agencies or political subdivisions for the disposal of such items and such person is authorized to use such property for such purpose.
 B. No person shall operate any truck or other vehicle on any highway in such a manner or condition that litter resulting from industrial, commercial, mining, or agricultural operations in which the person is involved can blow or fall out of such vehicle or that mud from its tires can fall upon the roadway.
 C. (1) If the litter is disposed of from a motor vehicle, boat, or conveyance, except a bus or large passenger vehicle or a school bus, all as defined by R.S. 32:1, there shall be an inference that the driver of the conveyance disposed of the litter. If such litter was possessed by a specific person immediately before the act of disposing, there shall be a permissive rebuttable presumption that the possessor committed the act of disposing.
 (2) When litter disposed in violation of this Section is discovered to contain any article or articles, including but not limited to letters, bills, publications, or other writings, which display the name of a person or in any other manner indicate that the article belongs or belonged to such person, there shall be a permissive rebuttable presumption that such person has violated this Section.
 D. A person shall be jointly and severally liable for the actions of its agents, officers and directors for any violation of this Section by any agent, officer, or director in the course and scope of his employment or duties.
 E. The person shall be cited for the offense by means of citation, summons, or other means provided by law.
 F. Any person found liable under this Section shall:
 (1) Pay a civil penalty of one hundred dollars.
 (2) Repair or restore property damaged by or pay damages for any damage arising out of the violation of this Section.
 (3) Pay all reasonable investigative expenses and costs to the investigative agency or agencies.
 (4) Pay for the cleanup of the litter unlawfully discarded by the defendant.
 G. Any person found liable under the provisions of this Section shall pay special court costs of fifty dollars in lieu of other costs of court which shall be disbursed as follows:
 (1) Twenty dollars shall be paid to the judicial expense fund for that district, or to the justice of the peace or the city court, as the case may be.
 (2) Twenty dollars shall be paid to the office of the district attorney, or to the constable or to the municipal prosecuting attorney, as the case may be.
 (3) Ten dollars shall be paid to the clerk of the district court, or to the justice of the peace or the city court, as the case may be.
 H. A person may be held liable and fined under this Section although the commission of the offense did not occur in the presence of a law enforcement officer if the evidence presented to the court establishes that the defendant has committed the offense.
 I. For the purposes of this Section each occurrence shall constitute a separate violation.
LSA-R.S. 30:2531.3(A) prohibits disposal of litter by commercial operations onto public places, upon property not owned by the commercial interest, or in or on state waters. LSA-R.S.30:2531.3(B) prohibits operation of vehicles that would allow trash or debris such as you describe from blowing or falling out of the vehicle. LSA-R.S. 30:2531.3(C) imposes a presumption, though rebuttable, that the driver of a suspect vehicle committed the act of disposing. Finally, under LSA-R.S. 30:2531.3(D), commercial operations are jointly and severally liable for its agents, i.e., drivers.
Thus, the commercial interests you suspect as being responsible for trash and debris along Plaquemines Parish Highway 11 could be found liable and made to pay a civil penalty, repair or restore the damaged property, pay damages for any damages arising out of a violation of this Section, pay investigative costs and expenses, and pay for cleanup of the litter.
The offense of littering need not be witnessed by law enforcement if evidence is sufficient to establish the guilt of a defendant. As a measure of deterrence, it should be noted that each occurrence constitutes a separate violation making it possible for substantial fines and penalties.
In connection with question number two, LSA R.S. 34:851.27
provides the following:
 A. Through the passage of this Part, the state reserves to itself, through the commission, the right to regulate the operation and to establish the minimum equipment requirements of vessels and motorboats. Except as provided in Subsection B of this Section, R.S. 34:3269(13), and R.S. 33:1236.12, all political subdivisions of this state are expressly prohibited from regulating watercraft in any respect, including, but not limited to, their operation, minimum equipment requirements, registration (with or without a fee), or inspection.
 B. (1) The governing authority of any parish or municipality may establish and post speed limits on waterways within its jurisdiction with the exception of the Mississippi River, the Mississippi River Gulf Outlet, and the Gulf Intracoastal Waterway. Such speed limits, if established, shall be posted along the affected waterway.
 * * *
Clearly, the state, through its Wildlife and Fisheries Commission (Commission), has reserved unto itself sole authority to regulate the operation of all watercraft in the waters of the state. Under LSA-R.S. 34:851.27, political subdivisions are specifically prohibited from regulating watercraft "in any respect," including registration fees such as you are considering.
With regard to the issue of a proposed boat launch fee, we are of the opinion that LSA-R.S. 34:851.27 is sufficiently broad in scope to preclude a governing authority from implementing any such fee. The ultimate question with respect to such a fee is whether the fee is to regulate watercraft, the area in which the watercraft is to be used, or even the user of the watercraft.
In this instance, you have advised that the Plaquemines Parish Government regularly incurs costs associated with maintaining the navigability of waterways such as wheel washing and dredging. This maintenance appears to be due, in part, to commercial and recreational boat traffic on the various waterways of the parish. Given these facts, we must conclude that it is the watercraft and not the user or the area of use that is the object of the proposed fee and, as such, the proposed fee would be in contravention of LSA-R.S. 34:851.27.
In response to question three, we direct your attention to LSA-R.S. 56:3, which provides:
 A. The ownership and title to all wild birds, and wild quadrupeds, fish, other aquatic life, the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territory or jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, are and remain the property of the state, and shall be under the exclusive control of the Wildlife and Fisheries Commission except as provided in LSA-R.S. 56:4.
 B. Wild birds, quadrupeds, fish, other aquatic life, and the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico, within the territorial jurisdiction of the state, including all oysters and other shellfish and parts thereof and grown thereon, either naturally or cultivated, and all oysters in the shell after they are caught or taken therefrom, shall not be taken, sold, or had in possession except as otherwise permitted in this Title; and the title of the state to all such wild birds, quadrupeds, fish, and other aquatic life, even though taken in accordance with the provisions of this Title, and the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets always remains in the state for the purposes of regulating and controlling the use and disposition thereof.
As can be seen from the above, all oysters are owned by the state and are under the exclusive control of the Wildlife and Fisheries Commission. This ownership and resulting title remains in the state for the purposes of regulating and controlling the use and disposition thereof. LSA-R.S. 56:3. Thus, it is clear that the legislature has placed regulatory authority over oysters and indeed, the oyster industry, in the hands of the Wildlife and Fisheries Commission. It is our opinion that this exclusive regulatory control would prohibit the implementation of a fee by a political subdivision of the state such as that proposed by the Plaquemines Parish Government.
Additionally, with regard to oysters, the legislature has provided that "no license fee or tax other than that imposed by Part VI of this Title and by LSA-R.S. 56:446 shall be levied or imposed by the state or any of its subordinate political corporations or municipalities." LSA-R.S. 56:442.
Having determined that existing state law would preempt any attempt by the Plaquemines Parish Government to regulate further with respect to oyster tagging fees, we decline to address any potential constitutional arguments which may or may not be relevant.
We hope this response sufficiently addresses you concerns. If our office may be of further assistance, please feel free to call upon us again.
With kindest personal regards, I am
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ KEVIN L. HANCHEY Assistant Attorney General